IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TRIAX, INC.** **Plaintiff,** v. **TFORCE FREIGHT, INC.,** **Defendant.** | Civil No. 1:22-cv-01693-JRR |

**MEMORANDUM OPINION**

This matter comes before the court on Defendant TForce Freight, Inc.'s unopposed Motion for Summary Judgment to Limit and Cap the Damages to a Maximum of $3,000.00 Subject to Plaintiff's Proof of Liability. (ECF No. 42; the "Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted.

I.      **BACKGROUND**

Plaintiff Triax, Inc. ("Triax") is a corporation with its principal place of business in Frederick County, Maryland, with a subsidiary that sells "once-fired" brass. (ECF No. 22 ¶¶ 2, 4.) Defendant TForce Freight, Inc. ("TForce") is a corporation with its principal office in Richmond, Virginia. *Id.* ¶ 3. TForce is a common carrier engaged in interstate commerce. (ECF No. 25 at p. 1.) In its Amended Complaint, Triax alleges that, through its third-party freight brokering service, FreightCenter, it hired TForce to handle the shipment of a 375-pound brass separating machine (the "Machine"), with a purchase cost of $11,000, from California to Maryland. (ECF No. 22 ¶ 5–6, 9.) At the time of the Amended Complaint, the Machine had not arrived at Triax's warehouse. *Id.* ¶ 12. Triax's Designated Representative, Andre Purnell ("Triax's Designated Representative"),

1

later testified that the Machine was ultimately delivered in "approximately May of 2023." (ECF No. 42-2 at 51:21–52:7.)

TForce's transportation of the Machine was subject to the Bill of Lading.[1] (ECF No. 22 ¶¶ 7, ECF No. 1-3 at p. 8; ECF No. 42-3 at p. 14.) FreightCenter generated the Bill of Lading, identifying TForce as the carrier and Triax as the "Ship to Location." (ECF No. 22 ¶ 7; ECF No. 42-3 at p. 14.) FreightCenter generated the Bill of Lading on May 4, 2022, and TForce's representative signed it on May 5, 2022—the day that the Machine was to be shipped. (ECF No. 22 ¶ 5; ECF No. 1-3 at p. 8; ECF No. 42-3 at p. 14.) On the Bill of Lading, FreightCenter included a class designation of 77.5 and a shipment weight of 375 pounds. (ECF No. 1-3 at p. 8; ECF No. 42-3 at p. 14; ECF No. 42-2 at 71:10–72:4.) Class designation is a value assigned to the freight. (ECF No. 42-3 ¶ 15.) The Bill of Lading included a warning that "Liability Limitation for loss or damage in this shipment may be applicable," cited to the Carmack Amendment, 49 U.S.C. § 14706(c)(1), and advised that the shipment was "RECEIVED, subject to individually determined rates . . . that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to the rates, classifications[,] and rules that have been established by the carrier and are available to the shipper, on request." (ECF No. 1-3 at p. 8; ECF No. 42-3 at p. 14.) The signed Bill of Lading included a sticker stating: "LIMITATIONS OF LIABILITY APPLY, SUBJECT TO LIMITS OF LIABILITY OF THE CARRIER'S RULE TARIFF." (ECF No. 42-3 at p. 14.)

TForce maintained a "Rules Tariff" at the time of the shipment in this case (the "TForce Tariff"). (ECF No. 42-3 ¶ 3; ECF No. 42-3 at p. 9.) The TForce Tariff provides:

> In an effort to provide its customers with quality service at competitive rates, certain commodities may be offered to be shipped at less than full value and TForce Freight encourages shippers to

---

[1] "A bill of lading 'records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage.'" *ABB Inc. v. CSX Transp., Inc.*, 721 F.3d 135, 138 (4th Cir. 2013) (quoting *Norfolk S. Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 18–19 (2004)).

2

> review this publication, as some Items may be subject to limitations
> of liability, released values or other options specific to a shipment
> or a commodity.

(ECF No. 42-3 at p. 9).  The TForce Tariff was made available to shippers upon request.  (ECF No. 42-3 ¶ 4.)  It included Item 166 that identified its maximum liability per pound according to class designation. (ECF No. 42-3 at p. 11.) According to the TForce Tariff, the maximum liability for a class designation of 77.5 is $8.00 per pound.  *Id.*  It further provided that TForce, as the carrier, "will not be liable for any damages in excess of the limitations within Item 166," and that TForce would not "be liable for any indirect, incidental, consequential, loss of profit, loss of income, special, exemplary, or punitive damages." *Id.* at p. 12.

Regarding the TForce Tariff, Triax's Designated Representative testified:

> Q: Did you request a copy of the motor carrier tariff from FreightCenter
> A: No.
> Q: Did you request a copy of the motor carrier tariff from TForce Freight?
> A: No.
> Q: Based on the bill of lading, did you understand that the transportation was subject to the motor carrier tariff?
> A: Yes.
> Q: In terms of the weight itself, was the weight that you had provided to FreighCenter, the 375 pounds?
> A: Yes, that's the weight that I provided to them.

(ECF No. 42-2 at 83:21–84:13.)  Triax's Designated Representative further testified that he knew that the freight class translated to the value of the freight.  *Id.* at 105:17–20.

Following non-delivery of the Machine, Triax filed suit against TForce on June 10, 2022, in the Circuit Court for Frederick County, Maryland.  (ECF No. 1-3.)  On July 8, 2022, TForce removed the case to this court.  (ECF No. 1.)  Following motions practice, Triax filed the Amended Complaint, the operative complaint in this action, asserting one count under the Carmack Amendment.  (ECF No. 22; the "Amended Complaint").  Triax seeks: (i) monetary damages in the

amount of $1,007,254.32, presumably (although ambiguously) consisting of the cost of the Machine and the cost of purchase orders that it was set to process upon receiving the Machine; (ii) pre-judgment interest and costs; and (iii) "such other, further and different relief as may be just on the premises." *Id.* at p. 4. Defendant filed the instant Motion to limit available damages to a maximum of $3,000 in accordance with the Bill of Lading and TForce Tariff liability limitations referenced therein. To be clear, Defendant does not concede liability.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "To create a genuine issue for trial, 'the nonmoving party must

rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'" *Id.* (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). "In other words, a factual dispute is genuine only where 'the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find' in its favor." *Id.* (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 175 (4th Cir. 1988)).

In undertaking this inquiry, the court considers the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).

Although the Motion is unopposed, the court's evaluation is no less stringent than had Plaintiff filed a full-throated opposition. "[I]n considering a motion for summary judgment, the district court 'must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'" *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 409 n.8 (4th Cir. 2010) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)). *See Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013) (same). "'Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion,' the district court must still proceed with the facts it has before it and determine whether the moving party is entitled to judgment as a matter of law based on those uncontroverted facts." *Robinson*, 599 F.3d at 409 (quoting *Custer*, 12 F.3d at 416). Notably, in addition to Triax's election not to oppose the

substance of the Motion, Triax makes no Rule 56(c)(2) objection to any exhibit TForce offers in support of same—including sworn deposition testimony and documents supported by a sworn declaration from a TForce employee with personal knowledge. *See* FED. R. CIV. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); FED. R. EVID. 901 (explaining that a party may supply testimony from a witness with knowledge to satisfy the requirement of authenticating an item of evidence).

### III. ANALYSIS

The Carmack Amendment "creates a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." *ABB Inc. v. CSX Transp., Inc.*, 721 F.3d 135, 138 (4th Cir. 2013) (quoting *5K Logistics, Inc. v. Daily Express, Inc.,* 659 F.3d 331, 335 (4th Cir. 2011) (footnotes omitted)).  Under the Carmack Amendment, a carrier providing transportation or service must use a "receipt or bill of lading for property it receives for transportation." *Id.*; 49 U.S.C. § 14706(a)(1).  The carrier is then liable to the "person entitled to recover under the receipt or bill of lading" for "the actual loss or injury of the property caused by" the receiving carrier, the delivering carrier, or any other carrier to which the property is subsequently delivered.  49 U.S.C. § 14706; *Brentzel v. Fairfax Transfer & Storage, Inc.*, No. 21-1025, 2021 WL 6138286, at *2 (4th Cir. Dec. 29, 2021).  "This includes 'all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination.'   As such, a plaintiff shipper can recover all reasonably foreseeable consequential damages and lost profits that are not speculative."  *Rush Indus., Inc. v. MWP Contractors, LLC*, 539 F. App'x 91, 95 (4th Cir. 2013) (citing *Se. Express Co. v. Pastime Amusement Co.,* 299 U.S. 28, 29 (1936) and *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.,* 325 F.3d 924, 931 (7th Cir. 2003)).

While a carrier is generally liable for the actual loss of property under the Carmack Amendment, it may still "establish rates for the transportation of property . . . under which the liability of the carrier for such property is limited to a value established . . . by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation." 49 U.S.C. § 14706(c)(1)(A); *OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1099 (9th Cir. 2011) (same). "[A] carrier's ability to limit [its] liability is a carefully defined exception to the Carmack Amendment's general objective of imposing full liability for the loss of shipped goods." *Emerson Elec. Supply Co. v. Estes Express Lines Corp.*, 451 F.3d 179, 186 (3d Cir. 2006) (citation omitted); *see ABB Inc.*, 721 F.3d at 139 ("The Carmack Amendment's exception allowing for limited liability is 'a very narrow exception to the general rule' imposing full liability on the carrier.") (quoting *Toledo Ticket Co. v. Roadway Express,* 133 F.3d 439, 442 (6th Cir. 1998)). "To overcome this default posture of full liability imposed by the Carmack Amendment, the carrier and the shipper must have a written agreement that is sufficiently specific to manifest that the shipper in fact agreed to a limitation of liability." *ABB Inc.*, 721 F.3d at 142. Thus, courts must "'carefully scrutinize[ ]' any alleged limitation of liability 'to assure that the shipper was given a meaningful choice and exercised it as evidenced by a writing.'" *Id.* at 139 (quoting *Acro Automation Sys. v. Iscont Shipping,* 706 F. Supp. 413, 416 (D. Md. 1989)).

The Fourth Circuit has explained:

> To determine whether a carrier has limited its liability consistent with the strictures of the Carmack Amendment, courts have applied a four-part test, under which carriers must: (1) provide the shipper, upon request, a copy of its rate schedule; (2) 'give the shipper a reasonable opportunity to choose between two or more levels of liability; (3) obtain the shipper's agreement as to his choice of carrier liability limit; and (4) issue a bill of lading prior to moving the shipment that reflects any such agreement."[2]

---

[2] On page 16 of its memorandum, TForce identifies the factors the court should consider in ruling on its Motion, citing to a 1992 Third Circuit decision. The court applies the Fourth Circuit precedent here, both because it is binding and

7

*Id.* (quoting *OneBeacon Ins. Co.*, 634 F.3d at 1099–1100 (discussing the four-step test in a case brought under 49 U.S.C. § 14706) (footnote omitted)).[3]  "The carrier has the burden of proving that it has complied with these requirements." *OneBeacon Ins. Co.*, 634 F.3d at 1099 (quoting *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 612 (9th Cir. 1992)); *see Acro Automation Sys., Inc.*, 706 F. Supp. at 416 ("The burden of establishing that an agreement limiting liability has been made rests with the carrier.").

"The text of the Carmack Amendment imposes full liability on carriers, without regard to which party prepared the bill of lading." *ABB Inc.*, 721 F.3d at 142. Therefore, its provisions still apply when the shipper, as opposed to the carrier, drafts the applicable bill of lading. *Id.* Moreover, consistent with Supreme Court precedent, "[w]hen an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed." *Aniedobe v. Hoegh Autoliners, Inc.*, No. CIV.A. AW-09-2813, 2011 WL 829139, at *4 (D. Md. Mar. 7, 2011) (quoting *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 33 (2004)) (holding that a plaintiff accepted the carrier's limitation of liability that was incorporated into the bill of lading even though it was the plaintiff's "forwarding agent . . . that negotiated the terms of the bill of lauding [sic] with" the carrier); *see Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 185 (2d Cir. 2014) (holding that the Supreme Court's opinion in *Kirby* controls in the case before it under the Carmack Amendment); *Werner Enterprises, Inc. v. Westwind Mar. Int'l, Inc.*, 554 F.3d 1319, 1324–25 (11th Cir. 2009) ("*Kirby*'s

---

because it accounts for the relevant statutory change in 1995. *See ABB Inc. v. CSX Transp., Inc.*, 721 F.3d 135, 137–38 (4th Cir. 2013) (explaining that, prior to 1995, carriers were obliged to file their tariffs publicly, and thus shippers were generally charged with notice of the terms but that now "tariff" is "merely a contractual term") (citing *Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1030 (7th Cir. 2000)).

[3] The Fourth Circuit's decision in *ABB Inc. v. CSX Transportation, Inc.* concerned rail carriers, "subject to the provisions of 49 U.S.C. § 11706," and noted that motor carriers are subject the separate provisions of the Carmack Amendment codified at 49 U.S.C. § 14706. 721 F.3d 135, 138 n.2 (4th Cir. 2013).

teaching is not limited to maritime law. *Kirby* expressly derived its holding from *Great Northern,* a non-maritime case. Furthermore, the principles of fairness and efficiency animating the *Kirby* rule are not unique to the maritime context. As evidenced by the circumstances of this case, contracts for carriage on land as well as sea may involve extended chains of parties and agreements. Thus, the benefits of allowing carriers to rely on limitations of liability negotiated by intermediaries are equally as great here as under maritime law.")

In view of the foregoing, the court's analysis turns on whether there exists any genuine dispute of material fact as to the following factors: whether Triax requested a copy of its rate schedule (and, if so, whether TForce provided it to Triax); whether TForce gave Triax, or FreightCenter as its broker, a "reasonable opportunity to choose between two or more levels of liability"; whether TForce obtained Triax's (or FreightCenter's) agreement to the carrier liability limit; and whether the Bill of Lading reflecting such agreement was issued prior to shipment. *See ABB Inc.*, 721 F.3d at 139, *supra*.

Turning to the first factor, it is undisputed that Triax did not request TForce's rate schedule as set forth in the TForce Tariff. As explained, *supra*, Triax's Designated Representative testified that he did not request a copy of the TForce Tariff, and he understood from the Bill of Lading that the transportation was subject to the TForce Tariff. (ECF No. 42-2 at 83:21–84:13.) This is further supported by the unopposed declaration of Jennifer Turner-Acampora that the "TForce [] Tariff was made available to the Plaintiff and to all shippers, upon request pursuant to Federal law, namely the Carmack Amendment" and, to her knowledge, "Triax, Inc. did not request a copy of the TForce [] Tariff." (ECF No. 42-3 ¶¶ 4–5.) Accordingly, there is no dispute that (a) Triax did not request a copy of the TForce Tariff (including the liability limitations incorporated in the Bill of Lading); and (b) Triax knew the Bill of Lading was subject to the TForce Tariff.

The second factor concerns whether TForce gave Triax a reasonable opportunity to choose the proper level of liability in the Bill of Lading.[4] "A reasonable opportunity to choose between different levels of coverage 'means that the shipper had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice.'" *Carmana Designs Ltd. v. N. Am. Van Lines Inc.*, 943 F.2d 316, 320 (3d Cir. 1991) (quoting *Bio-Lab, Inc. v. Pony Express Courier Corp.*, 911 F.2d 1580, 1582 (11th Cir. 1990)); *see Chapman v. Allied Van Lines, Inc.*, No. 5:15-CV-00615-BR, 2018 WL 701627, at *9 (E.D.N.C. Feb. 2, 2018) (same). "The Supreme Court has made clear that this requirement contemplates not only a choice between levels of liability, but also a choice between rates, such that the rate paid by the shipper varies according to the liability borne by the carrier." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 905 F.3d 455, 462 (6th Cir. 2018) (citing *New York, N.H. & Hartford R.R. v. Nothnagle*, 346 U.S. 128, 135 (1953)). "[T]he very purpose of the requirement that the carrier provide the shipper with a choice between levels of liability is to allow the shipper to 'obtain[] the lower of two or more rates of charges proportioned to the amount of the risk.'" *Id.* (quoting *Adams Express Co. v. Croninger*, 226 U.S. 491, 509–10 (1913)).

Relevant here, "[i]n most of the cases involving shipper-drafted bills of lading, the shipper gets stuck with the liability limit it chooses because the shipper either negotiated for a lower shipping rate, or it knew it would get a discount on the full freight rate if it assigned a lower released value." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 259 F. Supp. 3d 767, 777–78 (S.D.

---

[4] While not disputed by either party, the court briefly addresses the fact that the Bill of Lading is unsigned by Triax, or FreightCenter, in view of the requirement that there be a "sufficiently specific" written agreement that manifests the shipper's agreement to a limitation of liability. *See, supra, ABB Inc.*, 721 F.3d at 142. There is no dispute that the Bill of Lading is a written agreement that bound the parties. Triax asserted in its Amended Complaint that shipment of the Machine was to be conducted in accordance with the "valid terms" of the Bill of Lading, and expressly incorporated the Bill of Lading into its original complaint. (ECF No. 22 ¶¶ 7, 26; ECF No. 1-3 at p. 8.) Triax's Designated Representative further testified that FreightCenter prepared the Bill of Lading, and FreightCenter entered the class designation of 77.5. (ECF No. 42-2 at 37:16–20; 57:20–22; 71:10–73:4; 75:2–11.)

Ohio), *on reconsideration in part,* 276 F. Supp. 3d 750 (S.D. Ohio 2017), *aff'd,* 905 F.3d 455 (6th Cir. 2018), and *aff'd,* 905 F.3d 455 (6th Cir. 2018) (citing cases); *see Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1273 (11th Cir. 2001) ("In this case, Siren drafted the bill of lading, Siren chose to use the term 'Class 85,' Siren did not rebut Estes' assertion at trial that 'Class 85' included a limiting aspect, Siren knew 'Class 85' determined the freight rate charged, and Siren knew that it received a 62% discount from Estes' full freight rate. We agree that the 'rate of freight is indissolubly bound up with the valuation' placed on the goods by the shipper." (citations omitted)). "The structure and exact language of the bills of lading are important facts when analyzing the reasonable opportunity requirement." *Exel, Inc.*, 259 F. Supp. 3d at 778.

It is undisputed that: (a) Triax did not request the TForce Tariff and that Triax provided the weight of 375 to FreightCenter to include in the Bill of Lading. (ECF No. 42-2 at 83:16–84:13; ECF No. 42-3 ¶ 5.); b) FreightCenter generated the Bill of Lading, which included a class designation of 77.5. (ECF No. 1-3 at p. 8; ECF No. 42-3 at p. 14; ECF No. 42-2 at 71:10–72:4.); and (c) Triax knew that the Bill of Lading was subject to the TForce Tariff. (ECF No. 42-2 at 83:21–84:13.) Further, the TForce Tariff included multiple class designation options correlated with varying maximum liability limits. (ECF No. 42-3 at p. 11.) Therefore, there is no dispute that Triax had a reasonable opportunity to choose the level of liability set forth in the Bill of Lading.

The third factor turns on whether TForce obtained Triax's agreement to the carrier liability limit. For the same reasons addressed above, there is no dispute of fact on this point. Triax admits the Bill of Lading governs the terms of the shipment and that it knew the Bill of Lading was subject to the TForce Tariff. (ECF No. 42-2 at 83:21-84:13; ECF No. 42-3 at p. 11; ECF No. 22 ¶¶ 7, 26.) Even had Triax not admitted these material facts, the Bill of Lading, which identifies the class

11

designation as 77.5 and a shipment weight of 375 pounds, states: "Liability Limitation for loss or damages in this shipment may be applicable," and that the shipment was "RECEIVED, subject to . . . the rates, classifications[,] and rules that have been established by [TForce] and are available to the shipper, on request," and the sticker on the Bill of Lading signed by TForce visibly advises that limitations of liability apply pursuant to the TForce Tariff. (ECF No. 1-3 at p. 8; ECF No. 42-3 at p. 14.)  There is no dispute, therefore, that TForce obtained Triax's agreement to the carrier liability limit.

Finally, in analyzing the fourth factor, there is, again, no dispute that the Bill of Lading was generated on May 4, 2022, the day that Triax, through FreightCenter, hired TForce as a carrier. (ECF No. 1-3 at p. 8; ECF No. 22 ¶ 6.)  The Bill of Lading was then signed by TForce's representative on May 5, 2022, the day that shipment was scheduled to occur. (ECF No. 22 ¶ 6, 7; ECF No. 42-3 at p. 14.)  Accordingly, there are no disputes of fact relevant to the final factor; and the undisputed facts favor the Motion.

In sum, there is no dispute that, consistent with the Carmack Amendment, TForce limited its liability per the Bill of Lading and the TForce Tariff.  TForce's liability, if proven, is therefore limited in accordance with the Bill of Lading, which incorporates the limitations of the TForce Tariff.  FreightCenter, as Triax's broker, selected a class designation of 77.5 and a weight of 375 pounds for shipment. (ECF No. 1-3 at p. 8; ECF No. 42-3 at p. 14.)  The TForce Tariff provides that a class designation of 77.5 corresponds to a maximum liability of $8.00 per pound, and that TForce will not be liable for "any indirect, incidental, consequential, loss of profit, loss of income, special, exemplary, or punitive damages," or "any damages in excess of the limitations" permitted according to the calculation of class designation and weight. (ECF No. 42-3 at p. 11, 60.)  Thus, according to the Bill of Lading, and the limitations of liability referenced therein, Triax's

maximum recoverable monetary damages pursuant to the Carmack Amendment are capped at $3,000.00 ($8.00 multiplied by 375 pounds), subject to Triax's proof of TForce's liability.

### IV. CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 42) will be granted.

July 19, 2024                                         /S/_____
                                                      Julie R. Rubin
                                                      United States District Judge